**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHANNON BOLDEN,** | : | |
| **Plaintiff** | : | **No. 1:25-cv-01539** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **KIM RY, <u>et</u> <u>al.</u>,** | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

Currently before the Court are an application for leave to proceed <u>in</u> <u>forma</u> <u>pauperis</u> and complaint filed by pro se Plaintiff Shannon Bolden ("Bolden"). For the reasons set forth below, the Court will grant Bolden leave to proceed <u>in</u> <u>forma</u> <u>pauperis</u> and dismiss the complaint without prejudice to Bolden filing an amended complaint.

I.      **BACKGROUND**

Bolden, a pretrial detainee incarcerated at the Dauphin County Prison ("DCP"), commenced the instant action by filing her complaint, application for leave to proceed <u>in</u> <u>forma</u> <u>pauperis</u> ("IFP Application"), and certified prisoner trust fund account statement, all which the Clerk of Court docketed on August 19, 2025. (Doc. Nos. 1–3.) In the complaint, Bolden names as Defendants: (1) Kim Ry ("Ry"), a kitchen supervisor; (2) Kaitlyn Bailey ("Bailey"), the "Aramark Food Service Director" at DCP; and (3) Aramark Corrections, LLC ("Aramark"). <u>See</u> (Doc. No. 1 at 1, 2–3).

Regarding her factual allegations, Bolden avers that Ry has "bullied and harrassed [sic]" her since Bolden started working under Aramark staff at DCP in the first week of March 2025. <u>See</u> (<u>id.</u> at 5). Ry constantly bullied Bolden in front of other inmates and Aramark staff. (<u>Id.</u>) Bolden also alleges that Ry started sexually harassing her in April 2025, and Ry "made sexual remarks" in front of other inmates and Aramark staff. <u>See</u> (<u>id.</u>).

In addition to Ry's bullying and harassment, Bolden alleges that Bailey falsified "statements" and that there were other issues with the kitchen.  See (id.).  Regarding these other issues, Bolden asserts that "Aramark staff" did not "follow[] policy and food safety guidelines and regulations."  See (id. at 4).  She allegedly witnessed "unsanitary and food safety hazzards [sic]" while working in the kitchen, such as "giving inmates and staff brown water to drink and cooking with it."  See (id. at 5).  The kitchen also had a "pest problem with [r]oaches and mice on the food."  See (id.).

Based on these allegations, Bolden indicates that she is asserting claims under 42 U.S.C. § 1983 against Defendants for violating her rights under the Eighth Amendment to the United States Constitution.  (Id. at 1, 4.)  She claims that Defendants' conduct caused her "[m]ental [a]nguish, fear of work with certain women of power, [p]ain and suffering, stress, [and] depression."  See (id. at 4).  For relief, she seeks monetary damages and an order removing Ry and Kim "from Aramark [because] they are not fit to work in these conditions . . . ."  See (id.).

## II.    LEGAL STANDARDS

### A.    Applications for Leave to Proceed in Forma Pauperis

Under 28 U.S.C. § 1915(a)(1), the Court may allow a plaintiff to commence a civil case "without prepayment of fees or security therefor," if the plaintiff "submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor."[1]  See id.  This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts."  Neitzke v. Williams, 490 U.S. 319, 324, 109 S. Ct. 1827, 104 L.Ed.2d 338 (1989).  Specifically, Congress enacted the statute to ensure that administrative

---

[1]  While the Court recognizes that Bolden is incarcerated, "[t]he reference to prisoners in § 1915(a)(1) appears to be a mistake.  In forma pauperis status is afforded to all indigent persons, not just prisoners."  See Douris v. Middletown Twp., 293 F. App'x 130, 132 n.1 (3d Cir. 2008) (unpublished).

court costs and filing fees, both of which must be paid by everyone else who files
a lawsuit, would not prevent indigent persons from pursuing meaningful litigation.
[Deutsch v. United States, 67 F.3d 1080, 1084 (3d Cir. 1995)].  Toward this end, §
1915(a) allows a litigant to commence a civil or criminal action in federal court in
forma pauperis by filing in good faith an affidavit stating, among other things, that
[they are] unable to pay the costs of the lawsuit.  Neitzke, 490 U.S. at 324, 109 S.
Ct. 1827.

See Douris, 293 F. App'x at 131–32 (footnote omitted).

**B.    The Court's Screening of the Complaint Under 28 U.S.C. §§ 1915A and 1915(e)(2)**

Under 28 U.S.C. § 1915A, this Court must "review . . . a complaint in a civil action in

which a prisoner seeks redress from a governmental entity or officer or employee of a

governmental entity."  See 28 U.S.C. § 1915A(a).  If a complaint fails to state a claim upon

which relief may be granted, the Court must dismiss the complaint.  See id. § 1915A(b)(1).  The

Court has a similar screening obligation with respect to actions filed by prisoners proceeding in

forma pauperis.  See id. § 1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case . . . if the . . .

the action . . . fails to state a claim on which relief may be granted . . . .").

In reviewing legal claims under Sections 1915A(b) or 1915(e)(2), the Court applies the

standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure.  See, e.g., Smithson v. Koons, No. 15-cv-01757, 2017 WL 3016165, at *3

(M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a

claim under § 1915A(b)(1) [and] § 1915(e)(2)(B)(ii) . . . is the same as that for dismissing a

complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."), report and

recommendation adopted, 2017 WL 3008559 (M.D. Pa. July 14, 2017); Mitchell v. Dodrill, 696

F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when reviewing a complaint for possible

dismissal pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under

Federal Rule of Civil Procedure 12(b)(6)").  To avoid dismissal under Rule 12(b)(6), a plaintiff

must set out "sufficient factual matter" in the complaint to show that their claims are facially plausible.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  This plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).  When evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff.  See id.; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a district court's screening under Sections 1915A and 1915(e)(2).  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).

In addition, in the specific context of pro se prisoner litigation, the Court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Higgs v. Att'y Gen., 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a pro se litigant, [courts] have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)).  Therefore, a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers."  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting Estelle, 429 U.S. at 106).  This means the Court must "remain flexible, especially 'when dealing with imprisoned pro se litigants . . . .'"  See Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021) (quoting Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244–45 (3d Cir. 2013))).

4

Additionally, when construing a pro se complaint, the court will "apply the relevant legal principle even when the complaint has failed to name it."  See Mala, 704 F.3d at 244.  However, pro se litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'"  See Vogt, 8 F.4th at 185 (quoting Mala, 704 F.3d at 245).

C.    Section 1983

Section 1983 is the statutory vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983. This statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

See id.  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors."  See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002)).  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).

III.    DISCUSSION

A.    The IFP Application

After reviewing the IFP Application as well as Bolden's certified prison trust fund account statement, it appears that she is unable to pre-pay the costs of this civil rights action.

5

Therefore, the Court will grant the IFP Application and allow her to proceed <u>in forma pauperis</u> in this case.[2]

**B.    Screening of Bolden's Claims**

**1.    Bolden's Request to Have Ry and Bailey Removed from Their Positions in the DCP Kitchen**

Among Bolden's two (2) demands for relief is a request that the Court direct that Ry and Bailey be removed "from Aramark [because] they are not fit to work in these conditions . . . ." <u>See</u> (Doc. No. 1 at 4).  The Court has construed this demand as a request to have Ry and Bailey fired from their jobs with Aramark and DCP.  This Court lacks the authority to impose injunctive relief in the nature of terminating a defendant's employment.  <u>See</u> <u>Buskirk v. Pa. Bd. of Prob. & Parole</u>, No. 22-cv-01826, 2022 WL 4542094, at *1–2 n.4 (E.D. Pa. Sept. 28, 2022) (construing plaintiff's request for the court to terminate the defendants' employment as seeking injunctive relief and holding that the court has no authority to terminate the employment of a state employee); <u>see also</u> <u>Dongarra v. Smith</u>, No. 18-cv-01939, 2020 WL 4934660, at *5 (M.D. Pa. Aug. 24, 2020) (dismissing plaintiff's request to terminate defendant's employment because plaintiff has not "named any defendant who has the power to terminate [defendant] from his job"), <u>aff'd</u>, 27 F.4th 174 (3d Cir. 2022); <u>Pagonis v. Raines</u>, No. 17-cv-00001, 2018 WL 9240919, at *4 (W.D. Tex. Aug. 10, 2018) (explaining that federal courts are not "prison managers" and concluding that injunctive relief in the form of terminating a prison official's employment is unavailable in a Section 1983 action (citing <u>Shaw v. Murphy</u>, 532 U.S. 223, 230 (2001))), <u>report and recommendation adopted</u>, 2018 WL 9240916 (W.D. Tex. Sept. 10, 2018).

---

[2]  However, because Bolden is a prisoner, she is advised that she will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act, regardless of the outcome of this action.  <u>See</u> 28 U.S.C. § 1915(b).

Therefore, the Court will dismiss with prejudice Bolden's request to have Ry and Bolden removed from their jobs for the failure to state a claim.

### 2.    Bolden's Claim Against Aramark

Bolden's claim against Aramark appears to be related to the allegedly "unsanitary and food safety hazzards [sic]" she witnessed while working in the DCP kitchen, which included giving inmates and staff brown water to drink, cooking with brown water, and having roaches and mice on the food.  See (Doc. No. 1 at 5).  The Court will construe this claim as a challenge to Bolden's conditions of confinement and will dismiss it for the failure to state a claim.[3]

Preliminarily, the Court notes that even though Bolden references the Eighth Amendment in her complaint, because she is a pretrial detainee, the Fourteenth Amendment, and not the Eighth Amendment, applies to her Section 1983 claims in this case.  See Thomas v. Cumberland

---

[3]  Section 1983 allows a plaintiff to bring suit only against a "person" who violates the plaintiff's constitutional rights while acting under color of state law, and county jails such as the DCP are not "person[s]" subject to suit under Section 1983.  See 42 U.S.C. § 1983; Edwards v. Northampton County, 663 F. App'x 132, 136 (3d Cir. 2016) (unpublished) (determining that a county jail is not a "person" subject to suit under Section 1983 (citing Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973))); Beaver v. Union County Pa., 619 F. App'x 80, 83 (3d Cir. 2015) (unpublished) (same); Lenhart v. Pennsylvania, 528 F. App'x 111, 114 (3d Cir. 2013) (unpublished) (same).  Additionally, other Judges in this District have concluded that county jail medical departments and business entities contracted to provide medical services to county jails are not "person[s]" for purposes of Section 1983.  See Colon-Santiago v. Primecare, Inc., No. 25-cv-00966, 2025 WL 1872491, at 6 n.7 (M.D. Pa. July 7, 2025) (citing cases concluding that business providing contracted medical services to county jails is not proper defendant under Section 1983); Molcon v. Betti, No. 18-cv-00596, 2018 WL 6787952, at *2 (M.D. Pa. Dec. 26, 2018).  Thus, there is an issue as to whether Aramark is a proper defendant under Section 1983, especially due to Bolden's failure to allege any specific facts about their relationship with DCP.  See, e.g., Washington v. Atl. County Just. Facility, No. 22-cv-02602, 2022 WL 3716489, at *2 (D.N.J. Aug. 29, 2022) (concluding that Aramark Corporation was not a "person" subject to liability under Section 1983); Kidwell v. Shirmekas, No. 20-cv-03239, 2021 WL 122849, at *2 (D. Kan. Jan. 13, 2021) ("Under some circumstances, corporations like Aramark may be considered as persons acting under color of state law for purposes of § 1983.").  Nevertheless, for purposes of this Memorandum, the Court presumes that Aramark is a proper defendant under Section 1983.

County, 749 F.3d 217, 223 n.4 (3d Cir. 2014) ("As a pretrial detainee, Thomas is not subject to the Eighth Amendment's protections; rather, the Fourteenth Amendment's Due Process Clause governs." (citing A.M. ex rel. J.M.K. v. Luzerne County Juv. Det. Ctr., 372 F.3d 572, 579 (3d Cir. 2004))); see also City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983) (explaining that the Eighth Amendment "has no application" until the government obtains a "formal adjudication of guilt").  Nevertheless, pretrial detainees' rights "are at least as great as the Eighth Amendment protections available to . . . convicted prisoner[s]."  See City of Revere, 463 U.S. at 244.

The Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees challenging their conditions of confinement.  See Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005) ("Hubbard I").  To establish a constitutional violation under the Fourteenth Amendment, a pretrial detainee plaintiff would have to plausibly allege that the challenged conditions of confinement amount to punishment.  See Bell v. Wolfish, 441 U.S. 520, 538 (1979) ("In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee."); see also Bistrian v. Levi, 696 F.3d 352, 373 (3d Cir. 2012) ("Given pretrial detainees' federally protected liberty interests ... under the Due Process Clause ... a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." (citation and internal quotation marks omitted)), abrogated on other grounds by Bistrian v. Levi, 912 F.3d 79, 96 (3d Cir. 2018).  When analyzing whether a condition of confinement amounts to punishment, the inquiry generally turns on whether the challenged conditions have a purpose other than punishment and whether the conditions are excessive in relation to that purpose.  See

Bell, 441 U.S. at 538–39 ("A court must decide whether the [particular restriction or condition accompanying pretrial detention] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose."); Hope v. Warden York County Prison, 972 F.3d 310, 326 (3d Cir. 2020) (explaining that, when evaluating claims of punitive conditions of confinement, "[t]he touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish or are 'but an incident of some other legitimate governmental purpose.'" (quoting Hubbard v. Taylor, 538 F.3d 229, 232 (3d Cir. 2008) ("Hubbard II"))); Hubbard I, at 158 (discussing analysis of whether condition of confinement constitutes punishment for Fourteenth Amendment purposes).[4]  In addition, the Court should consider the totality of the circumstances in assessing whether a prisoner's conditions of confinement violate the Fourteenth Amendment.  See Hubbard II, at 236, 238 (examining totality of circumstances to determine whether conditions of confinement constitute Fourteenth Amendment violation); Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996) (explaining that "to determine whether conditions of confinement violate the Eighth Amendment, it is necessary to examine the totality of the conditions at the institution"); Union County Jail Inmates v. DiBuono,

---

[4]  The Bell Court also explained:

> Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]. Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment.  Conversely, if a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

See 441 U.S. at 538–39 (internal quotation marks, citations, and footnote omitted).

713 F.2d 984, 1000–01 (3d Cir. 1983) (discussing that "the overall length of confinement is only one factor among several that must be considered by a district court in evaluating the totality of circumstances relevant to any alleged constitutional deficiency in shelter").

"Unconstitutional punishment typically includes both objective and subjective components." Stevenson v. Carroll, 495 F.3d 62, 68 (3d Cir. 2007).  "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component whether the officials acted with a sufficiently culpable state of mind." Id. (internal quotation marks and alterations omitted).  In general, when alleging a sufficiently culpable state of mind, a detainee must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety.  See Wilson v. Seiter, 501 U.S. 294, 298–99 (1991); see also Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference."); cf. Edwards, 663 F. App'x at 135 ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners, and pretrial detainees[.]" (internal citations omitted)).  Furthermore,

> [i]n determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed our warning that "[s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters."

See Bell, 441 U.S. at 541 n.23 (quoting Pell v. Procunier, 417 U.S. 817, 827 (1974)).

In this case, Bolden's allegations against Aramark fail to state a claim because she appears to seek liability against it because of the acts of its employees, which is improper.  In

other words, when proceeding under Section 1983 Bolden cannot attempt to hold Aramark "responsible for the acts of [their] employees under a theory of respondeat superior or vicarious liability."  See Natale v. Camden County Corr. Facility, 318 F.3d 575, 583 (3d Cir. 2003); see also Kidwell, 2021 WL 122849, at *3 (explaining that Aramark "may not be held liable [under Section 1983] based upon respondeat superior—that is, solely because they employ a person who violated the Constitution).  Instead, she must allege that Aramark violated her constitutional rights because of a custom or policy that it adopted.  See Miller v. Aramark, No. 21-cv-03282, 2022 WL 473971, at *3 (D. Kan. Feb. 16, 2022) (explaining that Aramark "may not be held liable [under Section 1983] based upon respondeat superior – that is, solely because it employs someone who violated the Constitution[; rather, p]laintiff must allege facts showing a policy or a custom of Aramark that caused his injury" (internal citations omitted)); see also Natale, 318 F.3d at 583 (analyzing section 1983 claim against private health care provider under municipal liability standard established in Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978)).

A "policy" arises when a decision-maker possessing final authority issues an official proclamation, policy, or edict.  See Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986).  "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law."  Est. of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019) (quoting Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990)).  For a custom to be the proximate cause of an injury, a plaintiff must establish that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [the plaintiff's] injury."  See id. (internal quotation marks and

alterations omitted).  Regardless of whether a plaintiff is seeking to impose municipal liability for a policy or a custom, "it is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom."  See Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990); see also Bielevicz, 915 F.2d at 850 (explaining that in both methods to obtain liability under Monell, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom").  The plaintiff "must [also] identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the applicable pleading standard.  See McTernan v. City of York, PA, 564 F.3d 636, 658 (3d Cir. 2009) (citation omitted).

> In addition,
>
> [t]here are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983.  The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy."  [Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 417 (1997)] (Souter, J., dissenting).  The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself."  Id.  Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice is likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'"  Id. at 417–18 (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 390[ (1989)]); see also Berg[ v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000)] (holding that plaintiff must "demonstrat[e] that the municipal action was taken with 'deliberate indifference' to its known or obvious consequences").

See Natale, 318 F.3d at 584 (third alteration in original) (internal footnote omitted).

Here, Bolden does not allege any facts demonstrating an unconstitutional policy or custom by Aramark that would potentially establish a plausible Section 1983 suit against it.

Therefore, the Court will dismiss her Section 1983 Fourteenth Amendment conditions-of-confinement claim against Aramark for the failure to state a claim.

### 3.    Bolden's Claim Against Bailey

Bolden's only claim against Bailey is for "falsifying documents." <u>See</u> (Doc. No. 1 at 5). This single allegation is insufficient to state a plausible claim for a constitutional violation against Bailey.  As such, the Court will dismiss this claim.

Here, Bolden fails to state a plausible claim against Bailey because she does not allege enough facts upon which this Court could reasonably infer that Bailey engaged in any misconduct.  In this regard, Bolden does not, <u>inter alia</u>: (1) state whether Bailey is another prisoner, a DCP employee, or an Aramark employee working at DCP; (2) describe Bailey's relationship to her, such as a supervisor/supervisee or a co-worker, if any; (3) identify the statements; (4) explain why the statements were allegedly false; (5) describe the context in which the statements were made; and (6) indicate whether the statements impacted her and, if so, describe the impact.  Overall, Bolden's single, five-word allegation against Bailey is wholly insufficient to state a plausible Section 1983 claim.

### 4.    Bolden's Claims Against Ry

Bolden alleges that Ry bullied and sexually harassed her in violation of the Eighth Amendment.  The Court will also dismiss these claims.

Under both the Fourteenth and the Eighth Amendments, Bolden's claim that Ry bullied her is insufficient to state a constitutional violation.  "[C]onduct such as verbal harassment, taunting, and the use of profanity, without any injury or threat thereof, is inadequate to plausibly state a constitutional violation under the Eighth Amendment."  <u>Hensley v. Pa. Dep't of Corr.</u>, No. 23-cv-01327, 2024 WL 197671, at *7 (M.D. Pa. Jan. 18, 2024) (citations omitted); <u>see</u>

Brown v. Deparlos, 492 F. App'x 211, 215 (2012) (unpublished) ("Verbal harassment of a prisoner, without more, does not violate the Eighth Amendment." (citing McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001); DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000))); see also Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993) (explaining that pretrial detainee's allegations of verbal abuse and threats by custodial officials fail to state claims under Section 1983). As this Court recently explained:

> "It is well-settled that the use of words, no matter how violent or harsh, do not amount to a violation of the prisoner's civil rights by [a correctional] officer." Svirbley v. McGinley, No. 17-cv-02292, 2018 WL 638475, at *3 (M.D. Pa. Jan. 31, 2018) (citations omitted); see also Sears v. McCoy, 815 F. App'x 668, 670 (3d Cir. 2020) (unpublished) (indicating that "[a] prisoner's allegations of verbal harassment, unaccompanied by another injury, are not cognizable under [Section] 1983" (citations omitted)); Dunbar v. Barone, 487 F. App'x 721, 723 (3d Cir. 2012) (unpublished) (concluding that state prison employees were entitled to summary judgment on plaintiff's claim that they "threatened him by telling him to give up his legal campaign[] and by remarking that he was a marked man and that his days were numbered," because "verbal threats or taunts, without more, are not sufficient to constitute a violation of the Eighth Amendment" (citations omitted)); Burkholder v. Newton, 116 F. App'x 358, 360 (3d Cir. 2004) (unpublished) ("It is well established that '[a]llegations of threats or verbal harassment, without injury or damage, do not state a claim under [Section] 1983.'" (first alteration in original) (quoting Ramirez v. Holmes, 921 F. Supp. 204, 210 (S.D.N.Y. 1996))); McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) (concluding that defendant correctional officer's threat to spray inmate with mace did not violate Eighth Amendment); Fennell v. Horvath, No. 18-cv-04870, 2019 WL 161733, at *4–5 (E.D. Pa. Jan. 9, 2019) (dismissing inmate's claim that correctional officer violated his Eighth Amendment rights by, inter alia, threatening to kill his family and use a mace gun against him" because he did not also "allege injury or physical damage"). However, "[v]erbal threats, with some reinforcing act accompanying them, may state a constitutional claim." See Lewis v. Wetzel, 153 F. Supp. 3d 678, 698 (M.D. Pa. 2015). "For example, a viable claim has been found if some action taken by the defendant escalated the threat beyond mere words." Id. (citations omitted).

See Aycock v. Steincamp, No. 25-cv-01086, 2025 WL 2100936, at *6 (M.D. Pa. July 25, 2025).

In this case, Bolden does not describe Ry's conduct other than to call it bullying or harassment. She does not aver that Ry threatened to physically harm her or that Ry committed any reinforcing act accompanying any threats to harm her. Bolden also does not allege that she

14

suffered any physical injury due to Ry's conduct. Accordingly, based on the sparse allegations about Ry's conduct in the complaint, Bolden fails to state a plausible Fourteenth Amendment claim against Ry based on her alleged verbal harassment, and the Court will dismiss this claim.

As for Bolden's claim that Ry sexually harassed her, the Court recognizes that:

> Sexual abuse and harassment can violate an inmate's constitutional rights. Ricks v. Shover, 891 F.3d 468, 473 (3d Cir. 2018) ("[P]rison sexual abuse can violate the Constitution"); Alberti v. Klevenhagen, 790 F.2d 1220, 1224 (5th Cir. 1986) ("The same conditions of violence and sexual abuse which constitute cruel and unusual punishment may also render the confinement of pretrial detainees punishment per se."); Chin v. Warfel, No. 23-4220, 2024 WL 665536, at *4 (E.D. Pa. Feb. 15, 2024) ("Because it appears from the complaint that Mr. Chin is a pretrial detainee, the Court analyzes his conditions of confinement claim under the Fourteenth Amendment."). Claims for sexual abuse and harassment are evaluated similarly to excessive force claims in that the prisoner must allege facts plausibly establishing both objective and subjective components. Ricks, 891 F.3d at 475 (stating that the misconduct "must be objectively, sufficiently intolerable and cruel, capable of causing harm, and the official must have a culpable state of mind"); Chin, 2024 WL 665536, at *4. Regarding the subjective component, the Court "consider[s] whether the official had a legitimate penological purpose or if he or she acted 'maliciously and sadistically for the very purpose of causing harm.[']" Ricks[,] 891 F.3d at 475 (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). Regarding the objective prong, the Court considers whether the action is "repugnant to the conscience of mankind" or whether it is "sufficiently serious or severe." Id. at 475–76 (citations omitted). However, "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 475 (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)).

> A claim for sexual abuse or harassment requires a showing of physical contact with the alleged perpetrator. Ricks, 891 F.3d at 471 ("Our society requires prisoners to give up their liberty, but that surrender does not encompass the basic right to be free from severe unwanted sexual contact.") (emphasis added); Williams v. Wetzel, 776 F. App'x 49, 53 (3d Cir. 2019) (affirming dismissal of Eight[h] Amendment sexual conduct claim because the allegations did not involve any sexual contact between the prisoner and the corrections officer); Chin, 2024 WL 665536, at *4 ("Mr. Chin alleges only that Sgt. Fischer made an inappropriate gesture and verbal comments. Because he does not allege any sexual contact by Sgt. Fischer, his claim based on sexual abuse is not plausible and will be dismissed with prejudice."); McCain v. Wetzel, No. 17-194, 2018 WL 1211507, at *3 (W.D. Pa. Mar. 8, 2018) (stating that "sexual harassment in the absence of contact or touching does not establish an Eighth Amendment violation"). "Verbal harassment, including lewd comments, sexual propositioning, and the like, is not sufficient to satisfy the objective element of an Eighth Amendment sexual harassment claim." McCain,

15

2018 WL 1211507, at *3 (citing <u>Manon v. Garrison</u>, 2012 WL 3542328 (M.D. Pa.
Aug. 15, 2012)); <u>Chin</u>, 2024 WL 665536, at *4 (applying the same standard to case
brought by pretrial detainee).

See <u>Plaza v. Lancaster County Comm'rs</u>, No. 24-cv-05943, 2025 WL 408682, at *4–5 (E.D. Pa.

Feb. 5, 2025) (most alterations in original).

Here, Bolden's sexual harassment claim fails for the same reason as her bullying claim,

namely, she does not allege any facts describing the nature of Ry's sexual harassment.  Instead,

Bolden avers that Ry "made sexual remarks."  <u>See</u> (Doc. No. 1 at 5).  It is unclear from this

allegation whether Ry made those remarks about Bolden or about others and, more importantly,

Bolden does not allege that Ry made any sexual contact with her.  Accordingly, the Court will

also dismiss Bolden's Fourteenth Amendment claim based on Ry's alleged sexual harassment.

### C.    Leave to Amend

Having determined that Bolden's claims against Defendants are subject to dismissal, the

Court turns to whether to grant her leave to file an amended complaint.  Courts should generally

give leave to amend but may dismiss a complaint with prejudice where leave to amend would be

inequitable or futile.  <u>See</u> <u>Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.</u>, 482 F.3d 247,

252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of

whether it is requested—when dismissing a case for failure to state a claim unless doing so

would be inequitable or futile."); <u>see also</u> <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108

(3d Cir. 2002) ("When a plaintiff does <u>not</u> seek leave to amend a deficient complaint after a

defendant moves to dismiss it, the court must inform the plaintiff that [they have] leave to amend

within a set period of time, unless amendment would be inequitable or futile.").  "In determining

whether [amendment] would be futile, the district court applies the same standard of legal

sufficiency as [it] applies under Fed. R. Civ. P. 12(b)(6)." In re Burlington Coat Factory Sec.
Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).

Based on the analysis above, the Court will grant Bolden leave to file an amended
complaint regarding only her Section 1983 claims for monetary damages against Defendants
because doing so at this stage would not be futile. If Bolden files an amended complaint, she
should carefully consider the reasons articulated above for dismissing her claims.

IV.    **CONCLUSION**

For the foregoing reasons, the Court will grant the IFP Application and dismiss the
complaint without prejudice to Bolden filing an amended complaint as to only her Section 1983
claims against Defendants for monetary damages. An appropriate Order follows.[5]

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

---

[5] The Order will provide additional information to Bolden about filing an amended complaint.